IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA A. MCARTHUR | ) | |
| | ) | No. 16 CV 11684 |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Barbara McArthur ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and 138(c)(3). For the reasons set forth below, Claimant's motion for summary judgment [15] is granted and the Commissioner's motion for summary judgment [17] is denied.

## I. Background

## A. Procedural History

Claimant filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 14, 2011, alleging that her disability began on April 27, 2009. (R.328-37.) Her applications were denied initially and on

reconsideration. (R. 106-09.) Claimant requested a hearing before an ALJ, which was held on August 6, 2012. (R. 74-105.) On September 20, 2012, the ALJ issued a written decision finding that Claimant was not disabled. (R. 110-29.) On February 6, 2014, the Appeals Council remanded the decision. (R. 131-32.) The Appeals Council ordered the ALJ to update the record concerning Claimant's impairments, including possibly ordering medical source statements and a consultative eye examination. (*Id.*) A supplemental hearing was held on November 20, 2015. (R. 45-73.) On January 26, 2016, the ALJ issued a new written decision finding that Claimant was not disabled. (R. 16-44.) On November 2, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) This action followed.

**B. Relevant Medical Evidence**

**1. Treating Physicians**

One of Claimant's primary care physicians, Dr. Tau Pandey, began seeing Claimant on May 11, 2010, and saw her every two to three months. (R. 530.) Dr. Pandey completed an RFC Questionnaire in August of 2011. (R. 531.) He listed her prognosis as "fair" and opined that Claimant's symptoms were frequently severe enough to interfere with her attention and concentration. (*Id.*) He stated that she could sit for 20 minutes at a time, stand/walk for 15 minutes at a time, and could only walk one city block before needing to rest. (*Id.*) He further opined that she could only sit for one hour in an eight hour day, could stand/walk for one hour in an eight hour day, and would need to shift positions at will. (*Id.*) He also stated that Claimant would need to take a ten to fifteen minute break every hour. Dr. Pandey gave Claimant the limitations of

never being able to lift ten pounds or more, only able to use her hands and fingers for five to ten percent of the day, only able to reach for ten percent of the day, and would miss work more than four times a month. (R. 531.)

Claimant also saw Dr. Christabelle Bernardo as a primary care physician starting in August of 2014. (R. 1201-02.) She completed an RFC Questionnaire in December of 2014 and opined that Claimant's symptoms would seldom interfere with her attention and concentration, as long as she was not weight bearing. (*Id.*) She also stated that Claimant could sit for 60 minutes at a time but could only stand/walk for 15 minutes at a time. (*Id.*) She further opined that Claimant could sit for eight hours in a workday but could only stand/walk for a total of one to two hours. (*Id.*) She stated that Claimant would need a job that permitted changing positions at will. (*Id.*) Dr. Bernardo also opined that Claimant would need to take a ten minute break every hour. (*Id.*) Dr. Bernardo placed Claimant's weight limitations at frequently lifting less than ten pounds, occasionally lifting up to 20 pounds, and never lifting 50 pounds or more. (R. 1202.) Dr. Bernardo also opined that Claimant would be limited to using her hands and fingers to 50 percent of the day and would only be able to reach for ten percent of the day. (*Id.*) Dr. Bernardo explained that Claimant is psychologically averse to movement exercise and "verbalized her strategy as relying heavily on pills and passive modalities." (*Id.*)

### 3. Consultative Examiner

Dr. Mahesh Shah performed a consultative examination and X-ray on Claimant on July 18, 2011. (R. 549.) The X-ray showed mild degenerative disease of the lateral compartment of the right knee with a slightly diminished joint space. (*Id.*) Dr. Shah

3

noted that Claimant came to the exam with a cane and walked slowly without it. (R. 552.) Dr. Shah opined that Claimant might have early arthritis in her knees. (R. 554.)

4. **Agency Physicians**

Dr. Victoria Dow completed an RFC Assessment Form based on Claimant's medical records on August 24, 2011. (R. 562.) She opined that Claimant could occasionally lift 20 pounds and frequently lift ten pounds. (R. 556.) She further opined that Claimant could stand or walk for at least six hours in an eight hour workday, and she could sit for at least six hours in an eight hour workday. (*Id.*) Dr. Dow opined that Claimant would be limited in reaching all directions due to a history of left shoulder osteopenia and a history of cervical radiculopathy and severe degenerate joint disease of the neck. (R. 558.) Based on the exam, Dr. Dow opined that the evidence did not support Claimant's need for a cane, as she claimed she walked her dog. (R. 560.) Moreover, Dr. Dow found Claimant's statements to be only partially credible, as she alleged problems lifting, yet she stated she could carry bags, groceries, a basket of laundry, and was capable of taking out the trash. (*Id.*)

On reconsideration, Dr. George Andrews affirmed Dr. Dow's assessment with little discussion. (R. 583.) He noted that Dr. Pandey's opinion was not supported by the objective medical evidence, and therefore was not given full weight. (*Id.*)

5. **Non-Medical Sources**

Claimant was also evaluated and seen by a physical therapist, Brian Barin, for at least two months. (R. 1198.) He completed an RFC Questionnaire in December of 2014, opining that Claimant had a psychological aversion to activity that left her ankle

4

deconditioned. (R. 1199.) He continued to state that she had severe deconditioning and an apprehension for activity. (*Id.*)

**C. Claimant's Testimony**

Claimant's first hearing occurred on August 6, 2012, during which she was represented by her attorney. (R. 74-75.) Claimant testified that although she had been taking classes to become a registered nurse, she was forced to quit after only eight months of school due to missing classes for hospital visits. (R. 90.) She asserted that she had to stop working due to extreme weight loss from her diabetes. (R. 92.) Claimant complained of throbbing pain in her shoulders and legs as well as "foggy" eyesight, lack of hunger, pain in her teeth, and tingling in her fingers. (R. 96-97.) She stated that her doctors recommended insulin, but that she does not want to "stick [herself] every day." (R. 98.) She testified that she often forgets to take her evening dose of medication, but she never goes consecutive days without taking any medication. (R. 99.)

Her second hearing occurred on November 2, 2015, during which she was also represented by counsel. (R. 45-46.) Claimant testified that since her last hearing, she now has arthritis in her hand and both thumbs. (R. 52.) She testified to having a pinched nerve that causes stiffness and trouble turning her head. (R. 58.) To alleviate her neck pain and stiffness, she lays on a heating pad for five hours a day. (R. 59.) Claimant was also wearing a brace on her right hand. (R. 60.) Claimant further testified that her left knee is still causing pain, and it feels like "it's pulling the hamstring." (R. 61.) She stated that she was recommended therapy for both her right hand and her

knees, but that therapy was not helping. (R. 61-62.) When asked about her medications, Claimant stated that sometimes they make her nauseous. (R. 62.)

She stated that her left leg and ankle were her most severe impairment. (R. 63.) Both caused problems with standing and sitting, so she takes medication for the pain. (*Id.*) When asked about her aversion to exercise, Claimant asserted that physical therapists do not return her calls, limiting her exercise/physical therapy time. (R. 71.) She testified that she does her exercises as home. (R. 72.)

**D. Vocational Expert Testimony**

Vocational expert ("VE") Brian Harmon testified at the first hearing. The ALJ asked the VE to consider someone of Claimant's age, education, and work history who could lift up to 20 pounds occasionally, ten pounds frequently, stand and/or walk six hours in an eight hour work day, sit up to six hours in an eight hour work day with no restriction on foot controls, no climbing of ropes, ladders or scaffolds, frequent climbing of ramps and stairs, and no other restrictions on postural below the frequent level, able to reach overhead occasionally with the left upper extremity with the need to avoid concentrated exposure to hazards such as moving machinery and unprotected heights. (R. 104.) The VE stated that such an individual would be capable of performing Claimant's past work as an order clerk and data entry clerk. (*Id.*) Next, the ALJ asked the VE to keep the functional limitations and add that the individual would be off task for more than 15 percent of the day. (*Id.*) The VE stated that this would preclude all work. (R. 105.)

At the second hearing, VE Aimee Mowery testified. She testified that an individual with Claimant's RFC could still perform her past work as an order clerk and

6

home companion. (R. 66.) When the ALJ changed the hypothetical from light to sedentary work levels, the VE testified that Claimant could still perform her past job as an order clerk. (R. 67.) If the individual were limited to simple, repetitive tasks due to drowsiness caused by her medications, Claimant could still perform the home companion job at light exertion level but could not perform the order clerk job even at a sedentary exertion level. (*Id.*) If Claimant were restricted to reaching ten percent of the day, there would be no work available. (R. 70.)

**E. Medical Expert Testimony**

Medical expert Dr. Hugh Savage testified at the first hearing. (R. 75.) Dr. Savage testified that Claimant had the medically determinable impairments of knee pain, tobacco use disorder, diabetes mellitus, hypertension, glaucoma, and osteoarthritis. (R. 76-82.) Dr. Savage also opined that Claimant's arthritic complaints cause some limitations in her functional status. (R. 83.) The ALJ asked Dr. Savage to address state agency consultant Dr. Dow's RFC. (R. 84.) Dr. Savage opined that the RFC was correct, except that he stated she should never be on ladders, ropes or scaffolds. (*Id.*) Dr. Savage agreed that Claimant's overhead reach should be limited due to her history of neck disease, despite full range of motion and strength in her left shoulder. (R. 85.)

Medical experts Dr. Robert Taub and Dr. Michael Cremerius testified at the second hearing on November 2, 2015. Dr. Taub testified that Claimant has no severe visual impairments. (R. 49.) Dr. Cremerius testified that Claimant's depression is non-severe, with mild limitations in ADLS, mild limitations in social functioning, mild limitations in concentration, persistence, and pace, and no periods of decompensation.

7

(R. 51.) Dr. Cremerius also stated that Claimant's aversion to movement or exercise is not evidence of any mental disorder or impairment. (*Id.*)

**F. Prior ALJ Decisions and Appeals Council Remand**

The ALJ provided his first written decision September 20, 2012. (R. 110.) In this decision, the ALJ found Claimant to have "at least one, medically determinable, 'severe' impairment, or its equivalent." (R. 116.) The ALJ's RFC limited Claimant to light work without any limitations. (R. 119.)

The Appeals Council remanded the ALJ's first decision in a written notice, taking issue with the ALJ's findings of severe impairments at step two, as well as the ALJ's RFC determination. (R. 130-32.) Upon remand, the Appeals Council instructed the ALJ to update the record and obtain any additional evidence concerning Claimant's impairments, which may include a consultative eye examination and medical source statements if needed. (R. 132.) The Appeals Council also instructed the ALJ to consider all impairments and make a specific finding about which impairments are considered severe and nonsevere. (*Id.*) Next, the ALJ was constructed to give further consideration to Claimant's RFC and support the RFC with specific references to evidence in the record. (*Id.*) Finally, the Appeals Council instructed the ALJ to obtain supplemental evidence from a vocational expert if warranted. (*Id.*)

**II. Analysis**

**A. Standard of Review**

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such

8

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).  This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872.  The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act").  A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether

9

the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits. Prior to step one, the ALJ found that Claimant met the insured status requirements through December 31, 2013. (R. 22.) At step one, the ALJ determined that Claimant did not engage in substantial gainful activity during the relevant period. (*Id.*) At step two, the ALJ determined that Claimant had the severe impairments "of the claimant's musculoskeletal system due to her chronic pain syndrome, and the effects of some treatment of that syndrome." (*Id.*) The ALJ found that Claimant's visual impairments and mental impairments were non-severe. (R. 23.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 24.)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1545, 404.1567, 416.945, 416.967, but with the following limitations: Claimant would be limited to more

10

than occasionally lifting and/or carrying up to 20 pounds at a time, or more than frequently lifting and/or carrying up to ten pounds at a time; sitting or standing or walking more than six hours in an eight hour workday; climbing ropes, ladders, or scaffolds; more than frequently climbing ramps and stairs, kneeling, crouching, or crawling; more than occasionally reaching overhead with the left upper extremity; or having concentrated exposure to hazards, such as moving machinery or unprotected heights. (R. 27.) At step four, the ALJ determined that Claimant could perform her past relevant work as an order clerk. (R. 34.) Because the ALJ found Claimant capable of performing past relevant work, he did not move on to step five.

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Claimant asserts that the ALJ failed to comply with the Appeals Council's remand order at step two, that the ALJ erred in weighing medical opinions, that the ALJ impermissibly played doctor in creating the RFC, and that the ALJ improperly dismissed Claimant's subjective complaints. We address Claimant's argument below, ultimately finding that the ALJ's opinion should be remanded.

## C. The ALJ Did Not Comply With the Appeals Council's Remand.

Claimant contends that the ALJ failed to follow the instructions from the Appeals Council on remand. The ALJ is obligated to take any action that is required by the remand order. 20 C.F.R. § 404.977(b). While the ALJ is obligated to follow the Appeals Council's instructions, "whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance." *Poyck v. Astrue*, 414 Fed. Appx. 859, 861 (7th Cir. 2011). Instead, the focus is whether the ALJ's decision "is supported by substantial evidence." *Id.* (citations omitted). In the ALJ's original

decision, he found that Claimant had "at least one, medically determinable, 'severe' impairment, or its equivalent." (R. 116.) The ALJ did not specify what that impairment was. The Appeals Council remanded the decision, instructing the ALJ to "[c]onsider all impairments and make a specific finding about which impairments are considered severe and nonsevere." (R. 132.)

In the ALJ's second decision, he found that the "impairments of the claimant's musculoskeletal system due to her chronic pain syndrome, and the effects of some treatment of that syndrome, are 'severe' for purposes of disability evaluation." (R. 22.) The ALJ, again, did not specify which of Claimant's multiple musculoskeletal impairments were deemed severe. Although the ALJ found Claimant's visual impairments and mental impairments to be nonsevere, he still did not make a specific finding regarding Claimant's other impairments, and no single impairment was found to be severe. (R. 22-23.) The only new discussion in the ALJ's decision in step two is regarding Claimant's visual and mental impairments.

The Commissioner argues that the addition of the phase "the impairments of the claimant's musculoskeletal system due to her chronic pain syndrome, and the effects of some treatment of that syndrome, are 'severe' " is enough to address the Appeals Council's remand instructions. The Commissioner also contends that this sentence specifically finds that Claimant's chronic pain syndrome is a severe impairment. The Court disagrees with this argument. A logical reading of the sentence finds that Claimant's (unspecified) musculoskeletal system impairments along with the effects of the treatment of Claimant's chronic pain syndrome are severe impairments. The Appeals Council instructed the ALJ to "make a specific finding about which impairments

are considered severe and nonsevere." (R. 132.) Specifically, the Appeals Council noted that the ALJ did not make any detailed findings as to whether Claimant's diabetes, hypertension, hypercholesterolemia, knee pain, and degenerative disc diseases were considered severe. (R. 131.) The ALJ did not fix this problem in his subsequent decision and failed to create a logical bridge.

It is Claimant's burden to produce medical records that would show a given impairment. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). However, here Claimant has provided multiple medical records showing impairments of cervical radiculopathy, cervical spinal stenosis, osteopenia, neck pain, back pain, pain in her left leg and ankle, pain in the bilateral shoulders and knees, pain/numbness/tingling in her hands, and right hand carpal tunnel syndrome suspected to be osteoarthritis. (R. 504, 507-08, 539-41, 544-47, 587-90, 593-95, 601-02, 610-12, 631-35, 812, 822-25, 828-30, 833, 838, 860-62, 1167-68, 1192.) The ALJ does not specify which of these musculoskeletal impairments are severe and which are nonsevere, making it impossible for the Court to determine whether he properly analyzed Claimant's RFC in light of her impairments. Accordingly, the ALJ failed to build an "accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted).

While the ALJ did fail to comply with the Appeals Council's instructions on remand, the more significant concern is the ALJ's failure to support his determination by substantial evidence. The Court cannot review the ALJ's decision when the ALJ leaves out important information such as which impairments are severe. On remand, the ALJ

should address each of Claimant's impairments specifically and determine whether each is severe or nonsevere.

**D. The ALJ Erred in Weighing the Treating Physician Opinions.**

Claimant argues that the ALJ erred in weighing the opinions of Dr. Pandey, Dr. Bernardo, and physical therapist Mr. Barin. Claimant first asserts that the ALJ failed to discuss Dr. Pandey's opinion in his second decision. However, the Commissioner argues that the ALJ incorporated his discussion of Dr. Pandey's opinion by reference. Claimant does not respond to this argument, and therefore waives the argument.

The opinion of a treating physician is afforded controlling weight if it is both "well supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir 2003), an ALJ must "offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1127 (7th Cir. 2016). Even where the ALJ chooses not to give a treating opinion controlling weight, she must still determine what weight to give the treating opinion. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6)

other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Claimant also asserts that the ALJ's dismissal of Dr. Pandey's opinion is not supported by substantial evidence. The ALJ found that Dr. Pandey's opinion was not consistent with the medical evidence. (R. 122.) The ALJ then provided a full discussion of the evidence, analyzing which of the functional limitations were inconsistent with the medical evidence. (*Id.*) The ALJ provided multiple examples in the record that contradicted Dr. Pandey's opinion. The ALJ "is not required to address every piece of evidence,'" but he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. He has done so here, and his discussion of Dr. Pandey's opinion is supported by substantial evidence.

Although the ALJ did not err in his discussion of Dr. Pandy's opinion, he did err in his assignment of weight (or lack thereof) to Dr. Bernardo's opinion. Although he briefly discussed Dr. Bernardo's opinion, he failed to assign it any weight. (R. 33.) Dr. Bernardo is a treating physician, and failure to make a weight determination with respect to a treating physician's opinion amounts to a failure to "minimally articulate his reasons for crediting or rejecting evidence of disability … and failure to do so constitutes error." *Clifford*, 227 F.3d at 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ only discusses Dr. Bernardo's opinion with regards to Claimant's ankle. The discussion of Dr. Bernardo's opinion is cursory and only mentions a small portion of the opinion, without assigning it any weight. This failure to make a weight determination must result in remand.

15

Finally, Claimant argues that her physical therapist's opinion was not assigned a weight. Although physical therapists are not an acceptable medical source as defined in 20 C.F.R § 404.1502(a) and 20 C.F.R. § 404.1527, the ALJ is required to articulate what weight is given to such sources when the opinion "may have an effect on the outcome of the case." 20. C.F.R. § 404.1527(f)(2). Here, the ALJ appears to find that Claimant's ankle pain is a result of deconditioning, which was a finding made by Mr. Barin. The ALJ also discusses Mr. Barin's and Dr. Bernardo's opinions in tandem, as they contain portions of the same information. (R. 33.) The ALJ discusses Mr. Barin's opinion that Claimant was not compliant with prescribed treatment and therefore remained deconditioned, which the ALJ points out is a nonmedically determinable impairment. (*Id.*) Such an opinion affects the finding of disability. Furthermore, the ALJ appears to give Mr. Barin's opinion greater weight than the opinion of Dr. Pandey, the treating physician. In such cases where the ALJ gives greater weight to a not acceptable medical opinion, he "must explain the reasons in the notice of decision in hearing cases … if the determination is less than fully favorable." 20. C.F.R. § 404.1527(f)(2). The ALJ did not do so here.

## F. The ALJ Improperly Relied on His Own Interpretation of Medical Evidence.

Finally, Claimant argues that the ALJ impermissibly played doctor and failed to support his determinations with medical evidence. It is well settled that an ALJ may not "play doctor" by substituting his own opinion for that of a physician or make judgments that are not substantiated by objective medical evidence. *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 691 (N.D. Ill. 2003) (citing *Rohan v Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996)). Often, "common sense can mislead" and "lay intuitions about medical

phenomena are wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). The ALJ stated that the fact that Claimant takes oral medications (as opposed to insulin) is indicative of Claimant being non-compliant with her diabetic diet and a lack of exercise. (R. 30.) The ALJ offers no support, medical or otherwise, for this statement. Although a treating physician and a physical therapist reported that Claimant is averse to movement, she testified that she does her physical therapy exercises at home. (R. 72.) There is no evidence that she is non-compliant with her diet. The ALJ then states that chronic pain syndrome should be treated by NSAIDs, exercise, and increasing daily activity rather than narcotic-containing analgesics. (R. 33.) Again, the ALJ offers no medical support for these opinions. The ALJ may not use his own opinion to support his determination without the support of medical evidence. The ALJ playing doctor with regards to Claimant's diabetes and chronic pain syndrome treatment requires remand.

### III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. It is so ordered.

**ENTERED:**

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: October 17, 2018**